**Margaret LeMASTERS, M.D., Plaintiff,**

v.

**The CHRIST HOSPITAL,**
**et al., Defendants.**

**No. C-1-90-723.**

United States District Court,
S.D. Ohio, W.D.

July 13, 1991.

---

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, Ohio, for plaintiff.

James Allen Hunt, Kohnen, Patton & Hunt, Glen Alan Weissenberger, University

of Cincinnati, Cincinnati, Ohio, for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before this Court for consideration of the defendants' motion to dismiss (doc. 20). The plaintiff has filed a memorandum in opposition to that motion (doc. 23), and the defendants have replied (doc. 24). A hearing on this matter was convened June 25, 1991.

The plaintiff, Margaret LeMasters, is a board certified physician in obstetrics and gynecology and is employed by For Women, Inc. The defendants are the Christ Hospital and numerous individuals associated with the Christ Hospital. In late 1989, Dr. LeMasters' clinical staff privileges at Christ Hospital were suspended. These privileges were terminated in 1990. The plaintiff filed this action pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* and Ohio Revised Code Chapter 4112 alleging that Christ Hospital and certain individuals affiliated with Christ Hospital discriminated against her on the basis of sex and retaliated against her for participating in Equal Employment Opportunity Commission (EEOC) and Ohio Civil Rights Commission (OCRC) administrative proceedings.

The defendants filed this motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure alleging that this Court lacks subject matter jurisdiction over this matter. The defendants contend that the plaintiff did not maintain an "employment relationship" with Christ Hospital as required by 42 U.S.C. § 2000e *et seq.* and Ohio Revised Code Chapter 4112, and therefore is not entitled to bring Title VII claims in this Court.

### 42 U.S.C. § 2000e–2(a)(1)

Title VII is intended to protect the enormously important right to equal employment and "to rid from the world of work the evil of discrimination because of an individual's race, color, religion, sex or national origin." *Armbruster v. Quinn,* 711 F.2d 1332, 1340 (6th Cir.1983). *See also,* *Christopher v. Stouder Memorial Hospital,* 936 F.2d 870, (6th Cir.1991). Therefore, its terms must be broadly construed. *Id.*

In her first cause of action, Dr. LeMasters alleges that her clinical privileges were terminated because of her sex in violation of 42 U.S.C. § 2000e–2(a)(1). 42 U.S.C. § 2000e–2(a)(1) states in pertinent part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

42 U.S.C.A. § 2000e–2(a)(1) (1981). The issue in this case, then, is whether a plaintiff may state a cause of action under § 2000e–2(a)(1) by alleging that a defendant's actions interfered with an individual's employment opportunities with a third party.

The United States Court of Appeals for the Sixth Circuit has very recently addressed this issue in dicta. In *Christopher v. Stouder Memorial Hospital,* 936 F.2d 870 (6th Cir.1991), the Sixth Circuit expressly adopted the "principles and reasoning articulated in *Sibley Mem. Hosp.* and its progeny." *Id.* at 877.

In *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973), a self-employed male nurse claimed that the hospital refused to refer female patients in need of nursing services to him because of his sex in violation of § 2000e–2(a)(1). Although there was no employment relationship between the plaintiff and the hospital, the Court held that a party other than a plaintiff's employer could be liable under Title VII if that party controls the plaintiff's access to other employment. *Id.* The Court specifically stated:

Control over access to the job market may reside, depending upon the circumstances of the case, in a labor organization, an employment agency, or an employer as defined in Title VII; and it would appear that Congress has determined to prohibit each of these from exerting any power it may have to fore-

close, on invidious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Id.* at 1341.

In *Doe v. St. Joseph's Hospital of Fort Wayne,* 788 F.2d 411 (7th Cir.1986), a physician brought a Title VII claim against a hospital and certain individuals following the termination of staff privileges at that hospital. The district court dismissed the plaintiff's complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. *Id.* at 413. The United States Court of Appeals for the Seventh Circuit reversed the dismissal of the Title VII claim holding that the doctor must be given the opportunity to demonstrate that the hospital discriminatorily interfered with her employment opportunities with other employers. *Id.* at 425. The Court noted that 42 U.S.C. § 2000e-2(a) refers to "any individual" rather than "employee." *Id.* at 422. Further, "Title VII prohibits discrimination not only with respect to conditions of employment, but also with respect to *'privileges of employment.'* " *Id.* (emphasis in original).

In *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291 (11th Cir.1988), the Eleventh Circuit joined those endorsing the view that Title VII does not require an immediate employer-employee relationship. Dr. Zaklama, an Egyptian anesthesiology resident, accepted a one year residency with Jackson Memorial Hospital. *Id.* at 292. During his year of residency with Jackson Memorial, he was supposed to rotate through each of three area hospitals for three months each. *Id.* While Dr. Zaklama was at Mt. Sinai Medical Center, the Chief of the Department of Anesthesiology at Mt. Sinai decided that Zaklama could not complete his rotation at that hospital. *Id.* Because Dr. Zaklama was not permitted to complete his rotation at Mt.

Sinai, he was dismissed from the residency program at Jackson Memorial. *Id.* Zaklama brought suit pursuant to Title VII and 42 U.S.C. § 1981. *Id.* The jury awarded Dr. Zaklama compensatory and punitive damages, but the district judge granted the defendant's motion for judgment notwithstanding the verdict. *Id.* The Court of Appeals held that the district court's interpretation of Title VII was too narrow, stating:

> While it is true that it was Jackson Memorial that discharged Zaklama from the residency program, it does not follow that Mt. Sinai is immune from liability.... It is clear from the language of the statute that Congress intended that the rights and obligations it created under Title VII would extend beyond the immediate employer-employee relationship.

*Id.* at 294.

█ Guided by the implications of the Sixth Circuit's decision in *Christopher,* we conclude that 42 U.S.C. § 2000e-2 applies where an employer controls an individual's access to employment opportunities and denies that access based on unlawful criteria even though the individual is not an employee of that employer.

█ In the case at bar, Dr. LeMasters' clinical staff privileges at Christ Hospital were terminated. She contends that those privileges were revoked because of her sex. She further contends that that termination interfered with her privileges of employment with For Women, Inc. Accordingly, the defendants' motion to dismiss the plaintiff's first cause of action must be denied.

### 42 U.S.C. § 2000e-3(a)

In plaintiff's second cause of action, she alleges that the defendants terminated her clinical staff privileges in violation of 42 U.S.C. § 2000e-3(a). 42 U.S.C. § 2000e-3(a) provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e–3(a) (1981).

■ The Sixth Circuit has specifically determined that federal courts have jurisdiction to entertain claims made pursuant to 42 U.S.C. § 2000e–3 where the defendant is in a position to interfere with the plaintiff's employment opportunities even though the plaintiff is not an employee of the defendant. *Christopher v. Stouder Memorial Hospital,* 936 F.2d 870 (6th Cir.1991). In *Christopher,* the plaintiff, a private duty scrub nurse holding temporary privileges at the defendant hospital, alleged that her privileges at the hospital were terminated in violation of 42 U.S.C. § 2000e–3. *Id.* at 871–874. The United States Court of Appeals for the Sixth Circuit stated, "While it is true that Christopher was not a direct employee of Stouder, we find that Stouder's control over Christopher's ability to practice as a private scrub nurse sufficiently impacted her employment opportunities to bring her claims within the intended scope of § 2000e–3." *Id.* at 874. The Court further concluded:

As the goal of Title VII is to preserve employment opportunity, we can see no reason to conclude that Congress intended Title VII to prohibit discrimination by a non-employer defendant on the basis of race or sex, and to allow the same non-employer defendant to discriminate against a person who engages in protected activity under Title VII. In both instances the acts of the non-employer defendant have the effect of denying the plaintiff employment based upon impermissible grounds under the Act. Thus, we find that the trial court had jurisdiction to hear Christopher's § 2000e–3 claim based upon the principles and reasoning articulated in *Sibley Mem. Hosp.* and its progeny.

*Id.* at 876–877.

Accordingly, the defendants' motion to dismiss the plaintiff's second cause of action must be denied.

## OHIO REVISED CODE CHAPTER 4112

■ In her third cause of action, the plaintiff alleges that the defendants suspended and terminated her clinical staff privileges because of her sex in violation of Ohio Revised Code § 4112.02(A). Ohio Revised Code § 4112.02(A) provides in pertinent part:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the ... sex ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or *privileges of employment,* or any matter *directly or indirectly related to employment.*

Ohio Rev.Code § 4112.02(A) (Page 1991) (emphasis added).

This language is at least as broad as the language used in 42 U.S.C. § 2000e–2(a)(1). Therefore, for the reasons set forth above relating to 42 U.S.C. § 2000e–2(a)(1), the defendants' motion to dismiss the plaintiff's third cause of action must be denied.

In plaintiff's fourth cause of action, she alleges that the defendants suspended and terminated her clinical staff privileges in violation of Ohio Revised Code § 4112.02(I). Ohio Revised Code § 4112.02(I) provides:

It shall be an unlawful discriminatory practice:

\* \* \* \* \* \*

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful practice defined in this section, or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Revised Code § 4112.02(I) (Page 1991).

In interpreting the language of the Ohio Revised Code, courts must employ the rules of grammar and common usage unless particular words have acquired a technical or special meaning. Ohio Rev.Code

§ 1.42 (Page 1990). Employing the common usage of the words in § 4112.02(I), no employer-employee relationship is required.

The defendants rely on the court's decision in *Berger Hospital v. Ohio Civil Rights Commission*, No. 86CA7, 1987 WL 13493 (Ohio App. June 26, 1987) for the proposition that all of Chapter 4112 requires an employer-employee relationship. However, the court in that case implied that 42 U.S.C. § 2000e-2(a)(1) and Ohio Revised Code § 4112.02(A) were coextensive. Further, that court did not even mention § 4112.02(I). Accordingly, the defendants' motion to dismiss plaintiff's fourth cause of action must be denied.

In plaintiff's fifth cause of action, she alleges that defendants conspired to violate Chapter 4112 in violation of Ohio Revised Code § 4112.02(J). Ohio Revised Code § 4112.02(J) provides:

> It shall be an unlawful discriminatory practice:
>
> \*  \*  \*  \*  \*  \*
>
> (J) For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with sections 4112.01 to 4112.11 of the Revised Code, or any order issued thereunder, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

Ohio Revised Code § 4112.02(J) (Page 1991). Here, again, the statute makes no mention of a required employer-employee relationship. Accordingly, the defendants' motion to dismiss the plaintiff's fifth cause of action must be denied.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss the plaintiff's complaint is hereby denied.

SO ORDERED.